Bertram Harnett, J.
The Nassau County Public Employment Relations Board (PERB) determined in November, 1968 that the Faculty Senate of Nassau Community College (Senate) was the recognized and certified representative of full-time faculty members and nonfaculty staff at the college, excluding part-time employees and certain administrative personnel. Subsequent to that determination, the Senate, the county, and the college executed a collective bargaining agreement to be effective from September 11, 1969 to August 31,1971.
In February, 1970, the Union of American College Teachers (UACT) petitioned PERB for formation of a bargaining unit consisting of certain part-time faculty and employees not included in the Senate unit. The United Federation of College Teachers (UFCT) intervened in that proceeding. At some point in the PERB administrative process, the UACT ceased to appear, and the sole petition considered by PERB was that filed by the UFCT.
PERB scheduled a hearing on the UFCT petition, and notice to that effect was sent to UFCT. A copy of the UFCT petition was posted at the PERB office in the Nassau County Executive Building in the Mineóla complex. No notice was directly given to the Senate, and the Senate did not participate in the early proceedings, which commenced on October 14, 1970 before a hearing officer designated by PERB. The hearing officer subsequently submitted his report to PERB on January 12, 1971 recommending that the appropriate bargaining unit would be “ one unit * * * for both full-time faculty and part-time *310 faculty who are not management employees That proposed unit would include the employees then being represented by the Senate.
Before any PERB action upon that report, the Senate learned of the proceedings through newspaper accounts of the matter, and filed protests on the grounds that (1) the failure to advise the Senate of the TJFCT petition constituted a denial of due process of law; and (2) the hearing officer, who was the Executive Director of PERB and an employee of the County Department of Labor, and had been a member of the county bargaining team in the negotiations for the contract with the Senate, should be disqualified as having a conflict of interest.
On January 27,1971 PERB directed the hearing officer to hold a: “further hearing * * * for the sole purpose of having the Faculty Senate present its position concerning [the Hearing Officer’s] report and recommendations ”. Notice of that further hearing was given the Senate, and the Senate appeared and restated its objections to the procedures being followed. The objections were overruled, the Senate declined to participate further, and the hearing was concluded.
Upon the further report of the hearing officer reaffirming the initial recommendations, PERB issued its decision on May 24, 1971 adopting the findings of the hearing officer and directing a representation election for July 15, 1971 for the unit already represented by the Senate “ deleting therefrom the exclusion of part-time faculty and * * * adding thereto all part-time, night school and summer school faculty, who are not management employees ”.
The Senate then commenced this proceeding (CPLR art. 78) to invalidate that determination, asserting the same objections made before PERB. PERB responds that it has complied with the statutory procedures for its deliberations and has acted properly. It also asserts, as does UFC'T, that the Senate’s unchallenged representation status terminated on March 17, 1971 and that the Senate is therefore not aggrieved by an expansion of the bargaining unit. The UFCT also asserts that the Senate waived its opportunity to participate by failing to present witnesses at the additional hearing directed by the PERB order of January 27, 1971. On the return date of the proceeding, the court directed that the representation election be stayed pending the determination of the litigation.
As a certified and recognized employee organization, the Senate is entitled to unchallenged representation status: “ until the next succeeding budget submission date and, thereafter, for an additional period of either twelve months or, if the *311 parties so agree, not less than twelve nor more than twenty-four months, which period shall commence one hundred twenty days prior to such next succeeding budget submission date ”. (Civil Service Law, § 208, subd. [c].) Whether the unchallenged status of the Senate expired on March 17, 1971, as contended by PERB, the county, the college and TJFCT, depends on the meaning of the term ‘ ‘ budget submission date ’ ’. The college budget submission date is the second Monday in July, while the appropriate date for the county is the second Monday in November. (County Government Law of Nassau County, § 302 [L. 1936, ch. 879, as amd.] ; Education Law, § 6304, subd. 5-a.) However, the provisions of the Taylor Law (Civil Service Law, § 200 et seq.) pertain to public employees and public employers, and the term ‘ ‘ public employer ’ ’ is defined to mean the government which operates the college. (Civil Service Law, § 201, subd. 7, par. [c].) Under this interpretation, the relevant date is the budget submission date for the county, which is the appropriate budgeting and taxing authority. (Civil Service Law, § 201, subd. 2.) The county’s argument to the contrary overlooks its own ordinance creating PERB, which defines the term as meaning the county budget submission date. (Ordinance No. 228-1967, § 6.) In the absence of any legislative indication of a contrary meaning, the court will accept the county’s own statutory definition of the term, which has been accepted and approved by the State PERB in its approval of the local PERB creation pursuant to subdivision 1 of section 212 of the Civil Service Law. (See McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 129, subd. a.) (For future certifications, see L. 1971, ch. 503, §§ 1, 7, 20.)
Accordingly, the certification of the Senate entitled it to unchallenged status for a period not to continue beyond July 14, 1971. At all times beginning with the receipt of the UACT petition, continuing through all the hearings held at PERB’s direction and the rendition of reports and recommendations by the hearing officer on two occasions, until the ultimate PERB determination on May 24,1971, the Senate was entitled to unchallenged representation status. Nevertheless, the scheduling of a representation election for July 15, 1971, after the expiration of that unchallenged status, was not in violation of the Senate’s exclusive rights, which lost their exclusivity on July 14, 1971.
However, it remains to be determined whether PERB’s actions in altering the elements of the unit represented by the Senate were correct.
The Senate has not demonstrated a conflict of interest on the part of the hearing officer such as to warrant his disqualification. *312 Notwithstanding his prior participation in the county negotiations with the Senate, no appearance of partiality appears from the record now before the court which as a matter of law requires his disqualification.
The matter at bar thus turns to whether the Senate was improperly denied notice of the hearing and a reasonable opportunity to participate, and whether the PERB decision was within its lawful authority. The PERB Rules and Regulations (Rules) require that direct notice of petitions for certification of bargaining units be given to “ any employee organizations that have * * * claimed to represent any of the employees in the [requested] unit”. (Rules, § 6 [A] [2] [c]. Of. § 6 [C].) Notice of the petition must also be posted at the PERB office in the County Executive Building and at “ suitable offices of the County ”. (Rules, § 6 [A] [2] [a]; § 8.) It has been admitted that no direct notice was given the Senate.
The UFCT petition as filed affected only employees not represented by the Senate, and could not be expected to be of interest to the Senate. Under those circumstances, the Senate was not entitled to notice of the proceedings filed by UFCT. (Cf. Matter of Haynal v. Board of Regents, 61 Misc 2d 268; Matter of Ryan, 180 Misc. 478, affd. 267 App. Div. 861, mot. for lv. to app. den. 267 App. Div. 902, app. dsmd. 292 N. Y. 715. See, also, Matter of Coates, 9 N Y 2d 242, app. dsmd. 368 U. S. 34.) By the same reasoning, however, the hearing officer was not entitled in the absence of prior notice to the Senate to go beyond the bounds of a petition not affecting the Senate by including in his report recommendations which directly concerned the Senate’s interests. This error was then adopted and perpetuated in the PERB determination.
The belated notice and opportunity to participate given the Senate after the hearing officer had already reached his conclusions was not sufficient to cure the defect. In the context of the proceedings, after the appearance of the UFCT witnesses and the rendition of what was intended to be the final report of the hearing officer, the opportunity to participate was not meaningful. (See Matter of Haynal v. Board of Regents, supra; Matter of Ryan, supra.) A tribunal such as PERB must afford substantive and procedural due process to parties affected by its determinations (Mount St. Mary’s Hosp. v. Catherwood, 26 N Y 2d 493) and that procedure requires a meaningful opportunity to controyert material proof when it is given. (Matter of Walsh, 64 Misc 2d 293.) Indeed PERB concedes at page 13 of its own brief that it would have been sounder practice to have notified the Senate before 1971.
*313 Furthermore, the PERB Rules permit an amendment of an existing bargaining unit only on application of the county or the recognized representative of that unit. (Rules, § 12.) No such application was received here, and it was improper for PERB to direct that result in the absence of a proper application and ensuing procedures. The pending TJFCT application was only for certification of part-time faculty as an appropriate bargaining unit. If PERB considered the unit inappropriate, the proper procedure would have been to deny the application rather than amend an existing and separate unit represented by a separate employee organization. An original application for the single unit of full and part-time faculty would have to be accompanied by indications of support from 30% of the members of that proposed unit. The procedure followed here by PERB circumvents that requirement by permitting action upon the support of only 30% of a small unit, without any opportunity of rebuttal from full-time faculty members or their exclusive representative.
Transforming the TJFCT petition for a separate bargaining unit into a petition for expansion of the Senate unit denied the Senate due process of law under these circumstances, and exceeded the authority of the hearing officer and PERB. To the extent that the PERB determination goes beyond a denial of the TJFCT petition, it is in excess of PERB’s authority and must be annulled. The representation election for the proposed new unit will be canceled.